IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERT L. BRONSON,
     Petitioner,

v.                             Case No.  4:05cv308/MMP/MD

JAMES MCDONOUGH,[1]
     Respondent.

_____

ORDER and
REPORT AND RECOMMENDATION

     Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent has filed a motion to dismiss the petition as time barred.  (Doc. 15).  Petitioner has responded.  (Doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, it is the opinion of the undersigned that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.

BACKGROUND AND PROCEDURAL HISTORY

     On January 21, 2000 petitioner was found guilty by jury verdict of one count of sexual battery.  (Doc. 15, Ex. A).[2]  He was adjudicated guilty on February 28, 2000, and sentenced to 159 months imprisonment followed by two years probation.  (Ex. D).  On direct appeal, the Florida First District Court of Appeal ("First DCA") affirmed

_____

[1]James McDonough succeeded James Crosby as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).

[2]Hereafter, all references to exhibits are to those provided at Doc. 15, unless otherwise noted.

without written opinion on August 9, 2001. *Bronson v. State*, 795 So.2d 60 (Fla. 1st Dist. Ct. App. 2001) (Table) (copy at Ex. F3).[3]  Petitioner's motion for rehearing was denied on September 14, 2001, with the mandate issuing October 2, 2001. (Ex. F4).

On March 7, 2002 petitioner filed a petition for writ of habeas corpus in the Florida Supreme Court. (Ex. G).  The petition was dismissed for lack of jurisdiction on March 25, 2002. *Bronson v. State*, 817 So.2d 844 (Fla. 2002) (Table) (copy at Ex. H).

On July 25, 2002 petitioner filed a motion for postconviction relief pursuant to FLA.R.CRIM.P. 3.850.  (Ex. I).  The trial court denied relief in part and scheduled an evidentiary hearing on petitioner's remaining claims.  (Exs. J & K).  After the evidentiary hearing, the trial court denied relief on the remaining claims in an order dated June 9, 2003.  (Ex. L).  The First DCA affirmed without written opinion on January 7, 2005. *Bronson v. State*, 892 So.2d 477(Fla. 1st Dist. Ct. App. 2005) (Table) (copy at Ex. M).  The mandate issued February 2, 2005.  (Ex. M).

While the appeal in his first Rule 3.850 proceeding was pending, petitioner filed a second motion for postconviction relief pursuant to FLA.R.CRIM.P. 3.850 on February 3, 2004.  (Ex. P).  The trial court denied relief on March 4, 2004.  (Ex. Q). The First DCA affirmed without written opinion on October 12, 2004. *Bronson v. State*, 884 So.2d 938 (Fla. 1st Dist. Ct. App. 2004) (Table) (copy at Ex. R).  The mandate issued November 9, 2004.  (Ex. R).

Petitioner commenced the instant habeas corpus proceeding by filing a § 2254 petition on August 19, 2005.  (Doc. 1).

---

[3]Prior to filing an initial brief, petitioner filed in the trial court a motion and an amended motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).  (Ex. E).  The motion was granted in that the portion of petitioner's sentence imposing two years probation was reduced to one year and nine months.  (*Id*., p. 426).  The motion was denied by the trial court in all other respects.  (*Id*.).  Petitioner's motion for rehearing was denied on September 7, 2000.  (*Id*.). Petitioner then filed the initial brief in his direct appeal on November 15, 2000, (Ex. F1); the State filed an answer brief, (Ex. F2); and petitioner filed a reply brief.  (Ex. F1).

## DISCUSSION

Respondent asserts that the instant petition is barred by the statute of limitations.  Because petitioner filed this § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs the present petition.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).  According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state postconviction or other collateral review is pending shall not be counted toward any period of limitation.  28 U.S.C. § 2244(d)(2).

In the instant case, petitioner has not asserted that a government-created impediment to his filing existed, that he bases his claim on a right newly recognized by the Supreme Court, or that the facts supporting his claim could not have been discovered through the exercise of due diligence before the filing of this petition.  Thus, the statute of limitations must be measured from the remaining trigger, which is the date on which his conviction became final.  *See* 28 U.S.C. § 2244(d)(1).

Respondent contends petitioner's conviction became final, and the limitations period began to run, on November 7, 2001 which is ninety days from the date of the First DCA's decision affirming petitioner's judgment of conviction.  (Doc. 15, p. 3).  Construing petitioner's *pro se* reply liberally, petitioner appears to argue that the limitations period did not begin to run until ninety days after the First DCA issued its order denying rehearing.  Petitioner is correct.  If a petition for rehearing is timely filed in the state court, the 90-day period for filing a petition for certiorari in the United States Supreme Court seeking review of the decision of the state appellate court runs from the date of the state court's denial of rehearing.  *See* SUP. CT. R. 13.3;[4] *see also Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002) (for purposes of § 2244(d)(1)(A), the one-year limitations period began to run when the time expired for filing a petition for certiorari with the United States Supreme Court); *Jackson v. Secretary for the Dep't of Corrections*, 292 F.3d 1347, 1349 (11th Cir. 2002).  Accordingly,  for purposes of § 2244 petitioner's conviction became final on December 13, 2001 (ninety days after the First DCA issued its September 14, 2001 order denying rehearing), and the limitations period began to run.

Calculating the time period from December 13, 2001, 223 days elapsed before petitioner filed his first Rule 3.850 motion.[5]  That motion was pending from July 25, 2002 (the date it was filed) until February 2, 2005 (the date the First DCA issued the mandate on petitioner's appeal of the order denying relief).[6]  *See Nyland v. Moore*,

---

[4]Rule 13 provides, in pertinent part, as follows:

> The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate. . . . But if a petition for rehearing is timely filed in the lower court by any party, . . . the time to file the petition for a writ of certiorari for all parties . . . runs from the date of the denial of rehearing. . . .

SUP. CT. R. 13.3 (West 2005).

[5]The parties agree that petitioner's habeas corpus petition "filed" in the Florida Supreme Court was not "properly filed" for purposes of the tolling provision of 28 U.S.C. § 2244(d)(2), and thus did not toll the statute of limitations.  (Doc. 15, p. 4; Doc. 17, p. 2).

[6]During the pendency of petitioner's first Rule 3.850 proceeding, petitioner filed his second Rule 3.850 motion.  The motion was pending from February 3, 2004 (the date it was filed) until November 9, 2004 (the date the First DCA issued the mandate on petitioner's appeal of the order

216 F.3d 1264 (11th Cir. 2000) (recognizing that a "properly filed" state postconviction petition is "pending" under Florida procedure -- and consequently tolls the limitations period -- until the appellate court's issuance of the mandate on appeal). The clock began to run once more on February 2, 2005, and expired 142 days later on June 24, 2005.  Petitioner did not file his federal habeas petition until August 19, 2005.  Based on the foregoing, the instant habeas petition is untimely.

Petitioner argues that he is entitled to equitable tolling in light of what he considers the extraordinary circumstances of this case.  "It is by now clear in this Circuit that '[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when extraordinary circumstances have worked to prevent an otherwise diligent petitioner from timely filing his petition.'" *Drew v. Dep't of Corrections*, 297 F.3d 1278, 1286 (11th Cir. 2002) (quoting *Helton v. Secretary for Dep't of Corrections*, 259 F.3d 1310, 1312 (11th Cir. 2001)).  Although "[e]quitable tolling is an extraordinary remedy which is typically applied sparingly," *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990)), it is "appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999); *see, e.g., Irwin*,  498 U.S. at 96, 111 S.Ct. at 458) ("[Federal courts] have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner."  *Drew*, 297 F.3d at 1286.

In this case, petitioner asserts that he is entitled to equitable tolling because he received delayed notice of the First DCA's disposition of his motion for rehearing on direct appeal.  Specifically, petitioner alleges that he did not learn of the September 14, 2001 order denying rehearing until he received a letter from his appellate counsel on February 8, 2002.  (Doc. 17, pp. 2-3).  Relying on *Knight v.*

---

denying relief).  Since this second Rule 3.850 motion was resolved during the pendency of petitioner's first Rule 3.850 proceeding, it has no impact on the time computation under the AEDPA.

*Schofield*, 292 F.3d 709 (11th Cir. 2002), petitioner urges this court to find that his AEDPA clock was equitably tolled until February 8, 2002.

In *Drew v. Dep't of Corrections*, the Eleventh Circuit stated: "A lengthy delay between the issuance of a necessary order and an inmate's receipt of it <u>might</u> provide a basis for equitable tolling <u>if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition</u>."  297 F.3d at 1288 (emphasis added) (citing *Knight v. Schofield*, *supra*); *Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001) ("[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter."); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (explaining that a delay in receiving notice of denial of appeal might render equitable tolling appropriate)). The Eleventh Circuit has cautioned, however, that "not in every case will a prisoner be entitled to equitable tolling until he receives notice. <u>Each case turns on its own facts</u>."  *Knight*, 292 F.3d at 711 (emphasis added).  As explained below, *Knight* is distinguishable from the instant case in several significant respects.

In *Knight*, after denial of his state habeas petition, the petitioner filed a CPC application with the Georgia Supreme Court. *Id.* at 710.  Knight asked the clerk of the Georgia Supreme Court when he could expect a ruling.  The clerk assured him that he would be notified as soon as a decision was issued.  On September 9, 1996 the Georgia Supreme Court denied Knight's application.  The clerk sent notice of the decision to the wrong person, and Knight was not informed.  Knight contacted the Georgia Supreme Court again on January 16, 1998, inquiring as to the status of his case.  Two months later the clerk informed him that his application had been denied eighteen months earlier. *Id*.  The Eleventh Circuit stated: "Until the clerk responded, Knight had no way of knowing that his state remedies had been exhausted. . . . Therefore, he had every reason to delay [filing a § 2254 petition] until he knew that state relief had been denied."  *Id.*, at 711.  Thus, Knight was entitled to equitable tolling.

Petitioner in this case argues that his failure to receive notice of the First DCA's denial of his motion for rehearing constitutes an extraordinary circumstance that prevented him from filing a timely § 2254 petition.  Unlike *Knight*, where the problem for the petitioner arose because the petitioner was entitled to, and had been assured, personal notice of the state court's order, and the clerk of court sent notice of the decision to the wrong person, here petitioner was represented by counsel and thus not entitled to personal notice of the First DCA's order.  Nor had he been assured of such notice by the clerk of court.  Furthermore, the cause of delay between issuance of the First DCA's order and petitioner's knowledge of it was attorney error.  The Eleventh Circuit as well as many others have held that attorney negligence is not grounds for equitable tolling.  *Steed*, 219 F.3d at 1300; *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Ford v. Hubbard*, 305 F.3d 875, 890 (9th Cir. 2002); *Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002); *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2nd Cir. 2001); *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999); *see also Justice v. United States*, 6 F.3d 1474, 1480 (11th Cir. 1993) (quoting *Irwin*, 498 U.S. at 96, 111 S.Ct. 453 ("'principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect'")); *see generally Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) ("The rationale is that attorney negligence is not extraordinary and clients, even if incarcerated, must vigilantly oversee, and ultimately bear responsibility for, their attorneys' actions or failures.") (internal quotation marks omitted).  Petitioner advances no allegations of attorney malfeasance that would elevate this case to an "extraordinary circumstance" sufficient to warrant equitable tolling.  *Cf. Irwin*,  498 U.S. at 96, 111 S.Ct. at 458 (stating that the Court has allowed equitable tolling in situations where complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass).  Thus, petitioner has failed to establish that his untimely filing was the result of "extraordinary circumstances" that were beyond his control and unavoidable.  *See, e.g., LaCava v. Kyler*, 398 F.3d 271, 276 (3rd Cir. 2005) (holding that neither petitioner's failure to receive personal notice within the habeas

limitations period of the state court's denial of his petition for permission to appeal the denial of postconviction relief, nor petitioner's attorney's failure to timely notify him of the denial, constituted an extraordinary circumstance sufficient to warrant equitable tolling of the § 2244 limitations period; petitioner was not entitled to personal notice under state law because he was represented by counsel, and attorney error was not an extraordinary circumstance).

Second, in contrast to *Knight*, where the petitioner did not receive notice of the state court's order within the limitations period, petitioner in this case received notice well within the limitations period.

Finally, even assuming *arguendo* that this court agreed with petitioner's contention that the delayed notice he experienced constitutes an extraordinary circumstance, the undersigned nonetheless concludes that such circumstance did not prevent petitioner from filing his federal habeas petition within the limitations period, especially had petitioner exercised reasonable diligence. Although petitioner alleges that he "exercised due diligence in trying to find out what happened with his direct review and . . . diligently kept a collateral motion in the court attempting to toll the time," (doc. 17, p. 3 ¶ 5), he offers no specific facts to support this contention, and the record does not support a finding of due diligence.

The court has reviewed the state court record, including the letter from petitioner's appellate counsel on direct appeal. As discussed earlier, the First DCA affirmed petitioner's conviction and sentence on August 9, 2001. Petitioner's appellate counsel filed a motion for rehearing on August 23, 2001. (Ex. F4). Rehearing was denied on September 14, 2001. (*Id.*). The mandate issued on October 2, 2001. (Ex. F3). On February 6, 2002 petitioner's appellate counsel on direct appeal wrote petitioner a letter. (Doc. 15, Ex. G, Attach. to State Pet. for Writ of Habeas Corpus). Indicating that it was generated in response to written inquiries made by petitioner on December 6, 2001 and January 30, 2002, appellate counsel stated, in relevant part:

> I want to be blunt with you, because I do not know what happened in your case. The court denied rehearing on September 14, 2001, and the mandate issued on October 2, 2001. Ordinarily, both of

these papers should have been sent to you, but there is no note in the file that they were.  Further, your letter of December 6 was placed in the file, and it has no indication that I ever saw it.  I have had some transition in my secretary during that time, and somehow your case fell through the cracks.  I am very sorry about that.

. . . .

(*Id.*).

Neither petitioner's allegations nor the state court record shows that petitioner exercised sufficient diligence in ascertaining the status of his motion for rehearing. While the letter provides evidence of petitioner's two attempts to contact his attorney through mail, petitioner does not show that he took any steps, other than mailing letters to his attorney, to gain information concerning disposition of his motion for rehearing.  For example, petitioner did not make attempts to contact his appellate counsel in another manner such as calling, nor did he attempt to contact the court directly. *See Drew*, 297 F.3d at 1289 (holding that habeas petitioner was not entitled to equitable tolling where he claimed to have contacted the state court by mail, but provided no copies of the letters and did not make attempts to contact the court in another manner, such as calling or seeking help from a person with the ability to go to the court personally); *Logeira v. Secretary for the Dep't of Corrections*, No. 05-13778, 161 Fed.Appx. 902, 903 (11th Cir. Jan. 11, 2006) (Table, Text in WESTLAW) (holding that federal habeas petitioner was not entitled to equitable tolling during the time the state court failed to serve him with a copy of its order denying state habeas corpus relief, where petitioner did not receive personal assurance from the state court that he would be contacted at the conclusion of his case, and petitioner did not show that he took any steps, other than mailing letters to the state court, to gain information concerning his petition).

The limitations period in petitioner's case commenced on December 13, 2001, and petitioner's appellate counsel told him on February 6, 2002 that his appeal had failed.  Consequently, the delay in receiving notice from his attorney cost petitioner less than two months out of his one year limitations time.  And given the remaining ten months, petitioner has not met his burden of showing that he exercised

reasonable diligence in pursuing his federal habeas claims.  Petitioner filed a Rule 3.850 motion within five months of learning that his motion for rehearing had been denied.  However, he waited over six months (197 days) after that proceeding concluded to file his federal habeas petition, and he provides no explanation, let alone a causal connection, between his delayed notice of the denial or rehearing on direct appeal and his untimely filing of his § 2254 petition.[7]  *See, e.g., Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11th Cir. 2005) (refusing to invoke equitable tolling where habeas petitioner did not establish "a causal connection between his alleged mental incapacity and his ability to file a timely petition); *Logreira*, 161 Fed.Appx. 902, 903 (refusing to invoke equitable tolling where habeas petitioner waited six months afer learning that his state habeas application had been denied before filing his § 2254 petition, and further failed to establish a causal connection between his delayed receipt of the state court's decision and his untimely filing of his § 2254 petition).  Because petitioner has not alleged specific facts which if true would entitle him to relief, he is not entitled to a hearing or equitable tolling.

## CONCLUSION

The instant petition for writ of habeas corpus is untimely.  The record does not support application of the equitable tolling doctrine or any other exception to the limitations period.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that James McDonough has been substituted as respondent in this cause.

---

[7]In other words, petitioner fails to allege facts to suggest that he attempted to file his federal habeas petition within the 142 days remaining on the AEDPA clock (instead of waiting until two months after it had expired), much less that he diligently attempted to do so.  And he establishes no causal connection between the delayed notice in his direct appeal proceeding and his ability to file a timely federal petition).

And it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1) challenging the conviction and sentence in *State of Florida v. Robert Lee Bronson*, in the Circuit Court of Bay County, Florida, case number 98-1088, be DISMISSED with prejudice and that the clerk be directed to close the file.

At Pensacola, Florida this 24th day of April, 2006.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 4:05cv308/MMP/MD*